Good morning, ladies and gentlemen. We understand that counsel are present and prepared to argue. Judge Fragerson is a member of this en banc court and he is with us by telephone, I understand. Judge Fragerson, are you there? I am here. Very good. So we will begin with the arguments in the case of Smith v. City of Hemet. The appellant may proceed. Good morning, Your Honors. Donald Cook for the appellant, Mr. Smith. Heck v. Humphrey holds that where success on a Section 1983 lawsuit would necessarily imply a criminal conviction was invalid, a conviction that has not been overturned or expunged, then the Section 1983 lawsuit is barred. You cannot use the Section 1983 lawsuit to collaterally attack the criminal conviction. An easy application of that rule are the facts in Heck's. The Section 1983 plaintiff was in jail. He was convicted of manslaughter. He sues the prosecutor and the investigators, claiming that they suppressed evidence, that sort of thing, that had they not destroyed the evidence, he wouldn't have been convicted. Success on that Section 1983 lawsuit would imply that his valid conviction was invalid. We also know that Heck's rule applies to a Fourth Amendment false arrest claim. In footnote 6, Justice Scalia describes how a plaintiff who has been convicted of resisting a lawful arrest cannot thereafter sue under Section 1983, claiming he was seized in violation of the Fourth Amendment, because after all, a Fourth Amendment violation is necessarily inconsistent with a lawful arrest. But Heck's rule cannot apply to a case where a plaintiff sues for excessive force, where the excessive force occurs after the criminal conduct for which the plaintiff is convicted. Take Tennessee v. Gardner, the facts there. Edwin Gardner burglarizes the home. The officer arrives, but Gardner runs away. The officer chases him. The officer orders Gardner to stop or he'll shoot. Gardner doesn't stop. He keeps running. The officer shoots him. Did Gardner violate Section 148? Well, of course he did. The officer was acting lawfully and telling him to stop. He didn't stop. He kept running. Assume Gardner is later convicted of violating Section 148. Would that conviction bar him from suing for the wrongful shooting? No. The delay, Gardner's delay, occurs before the officer ever pulls the trigger. The criminal offense is made out complete upon his refusal to stop. So success on a Section 1983 lawsuit doesn't necessarily imply that the conviction was invalid. Another example is this case. But let's just tweak the facts a little. Instead of the officers siccing the dog on Mr. Smith, knocking him down, macing him, suppose instead they simply stepped up on the porch, grabbed his arms, you know, handcuffed him and that sort of thing. All the other facts are the same. Did Tom Smith violate Penal Code Section 148? Absolutely. Right? The officers, before they ever got to the porch, ordered him to stop, or rather ordered him to put his hands up, ordered him to turn around, ordered him to step off the porch, all of which he refused to do. All of those orders were lawfully given. He violates 148, even if the officers did nothing more than simply snap a handcuff on him. Do we know the factual basis for his plea in the municipal court? The trial court record doesn't show, that is the criminal court record, doesn't show the factual basis. The officer admitted that the 148 violation was made out before any of the officers got to the porch. And we do know, it's undisputed, as to Mr. Smith's activities before the officers got to the porch. And those activities show a 148 violation. So the record here from the trial, from the proceedings in federal court, established quite clearly that the 148 violation occurs before the officers ever got to the porch. Let me ask you about that. I have no trouble with your general proposition that you can't bar a 1983 claim for conduct after the offensive conviction. If the police lawfully arrest somebody, he committed a crime, they had probable cause, and then subsequently they beat him up, for example. That's the Sanford v. Motts case. However, in order to establish that it was after, I'm wondering what we look at. I'm thinking we look at the charge that he pleaded guilty to, and the way the crime is charged would include all of his conduct up to and including the arrest, rather than just the earliest conduct when he refused to take his hands out of his pockets. If the police could have proved conduct during the scuffle in order to obtain a conviction from the jury, then it seems to me that you don't have your predicate of showing that the conduct is after the offensive conviction. The problem with that set of facts is that the record here shows a 148 violation before the officers approached the porch. It does, but as long as the way it's charged, the police or the prosecutor could have proved a violation any time up to and including the arrest. The fact that they could have won the case without all that doesn't strike me as sufficient to establish that the conduct was after the offensive conviction. That, I submit, is a burden of proof question. That is, who has the burden of proof of showing the basis for the 148 conviction? Stanford v. Moss held that the defendants in the Section 1983 lawsuit had the burden of proof to show the basis for the 148 conviction. I don't know if it's burden of proof exactly. How is the case charged? I don't have the information in front of me. The complaint, that is, in the criminal court, the complaint is charged by just simply stating, on such and such a date, the defendant, Tom Smith, violated Section 148. There's no specification. It just says on such and such a date. Doesn't that mean that unless there had been a motion for a bill of particulars that the prosecution could have proved any conduct on that date in violation? Well, yes. It covers absolutely a broad range of conduct, including, obviously, what happens before the officers ever get to the porch. And as a practical matter, before those cases are tried, at some point the prosecutor specifies what the conduct is. And here Mr. Smith admits, yes, I violate 148, which is why I pled guilty. And I violate 148 because I never put my hands on my head, I did not step on the porch. But I would imagine that because he would have been entitled to a jury instruction that if the officers had used any excessive force, he wasn't guilty, that that means he's admitting he was, unless he had negotiated a bill of particulars or an amended complaint or something like that that limited the charge to the earlier part of the arrest sequence. He would not have been entitled to a jury instruction on the excessive force because, in this case, from Mr. Smith's standpoint, the 148, remember, Section 148 defines, the title says resisting arrest, but really it's delaying or obstructing an officer in the performance of his duties. Here, the performance of their duties is ordering Mr. Smith to step off the porch. He doesn't obey. They're not trying to arrest him at that point. They're obviously investigating. There's no issue of the use of force at that point. It's officers giving lawful commands and Mr. Smith not obeying the commands. That's one way that the jury convicted him. But it could have also convicted him because they thought he was scuffling and that he would have gotten this Calgic 16.111. I would agree if force was the prosecutor's theory in a criminal case. That may apply here. But what we have here is a record that shows defendants admit a 148 violation occurs before the officers approach the court. But what is it that we're trying to figure out here under Heck? I mean, it doesn't – shouldn't that inform which way we look at the various facts? And under Heck, the basic question is whether a – whether the 1983 case necessarily implies the invalidity of the conviction. And the answer is maybe yes, maybe no, because – so it doesn't necessarily imply the invalidity of the conviction. Well, I would agree that as soon as you look at this record and say, well, maybe it's a yes, maybe it's a no, then you know it does not necessarily imply the invalidity of the conviction. And at that point, Heck doesn't apply. Destruction is a case that, by analogy, is like our categorical cases where we're trying to decide whether or not a criminal conviction – these tend to be immigration cases or deportation cases – whether a criminal conviction that does not specify particular conduct, whether all the conduct within the statute necessarily comes within the federal category of aggravated felony. And you have to show that all the category, all the behavior within the statute is aggravated felony. And here you have to show, or the city of Hammond has to show, that everything he did is necessarily incompatible. And I don't think they can because he stood up there on that porch all by himself, alone and untouched, violating 148. Officer Quinn said he violated 148. Yeah, and that's why you cannot establish a necessarily inconsistent – I mean, obviously, you think about Heck when you look at these facts, but you cannot reach a conclusion that the conviction is necessarily inconsistent. Mr. Cook, do you dispute the fact that the cops were called to the house, had their encounter with Smith, and that there was a continuous sequence of events with them that was unbroken until the arrest? Well, sure. I mean, life is a continuous sequence of events, really. I mean, but he hadn't – unlike the Mott case where the person had been handcuffed and put in the car, where there's a break in the action. Was there any break in the action from the time the cops were called to the house to the time they put him under arrest, or was that a continuous scuffle? Well, there was no scuffle, first of all, before any officer got to the porch. But they're still dealing with him, trying to get him to either surrender or take him into custody, right? They're trying – at the point they step up on the porch, you figure they're trying to put his cuffs on him or knock – whatever they want to do. Was there any temporal break as there was in the Mott case? Well, I have a disagreement with the Mott – on your facts on the Mott case. But I would say that basically, I mean, there's no significant time break anywhere here in these events. If you want to characterize it as continuous, I mean, that's not an argument. But doesn't the California cases talk about a break in the action? Isn't that the term they use? No. The California – defining 148, again, any kind of resistance or delay, right? Whether it's in the course of the officer's making an arrest, whether they're conducting an investigation. I mean, you have the case of the people versus cooks, the bartender who interfered with the officer's ability to question somebody. That bartender gets convicted of Penal Code Section 148. But you don't see a distinction between the cop beating somebody up who's already been handcuffed and placed in the car, on the one hand, and in our situation here where the police are called, are struggling with the guy, and then they arrest him, and that's when the arrest takes place. You don't see the difference between the two. There is no distinction of a material nature between this case and Sanford v. Mott. In both cases, the resistance, delay, whatever you want to call it, occurs before the officer uses any force. And at that point, the conviction for 148 is no longer necessarily inconsistent with success in the 1983 claim. I'm really saying that Stanford is. They were made for an intervening arrest, but that arrest isn't relevant because the here, the crime was committed before, and the crime was committed before there, and the fact that they didn't arrest him here in the meanwhile doesn't really matter. Well, I mean, in Sanford, it was just – Because it's not – because this is not a resisting arrest crime necessarily. Yeah. I mean, 148 is not a resisting arrest crime. It's delaying an officer in the performance of his duties. In Sanford, Ms. Sanford had been arrested for battery on the animal control officer, and as the officer was trying to deal with – that is, the police officer was trying to deal with somebody else, she supposedly strikes or kicks the officer. Then he arrests her for the 148. Well, I mean, it's pretty clear that there her conduct occurs – criminal conduct occurs before the officer used any force. The officer then punches her. Therefore, it wasn't a bar. That's the important fact. It's the sequence. It's not whether it's continuous or not. When does the criminal conduct, that is, the 148 violation, occur in relationship to the use of force? If it occurs before the officer uses force, which were the facts in Sanford, as the facts are here, then the 148 conviction is not a bar. Well, you're saying it wouldn't be true if they had charged him clearly only with the second sequence of events. Well, if – If the information or indictment said you resisted arrest when you struggled when we were arresting you, then you'd be wrong. If they could somehow have fashioned an indictment or criminal complaint making clear that the 148 was based on when the officers were using force against them, they would have a better heck argument. I have a hard time conceiving how you could draft that complaint, given the breadth and nature of a 148 violation. But that's not the issue here. Well, even if they had done a factual basis, say at the time that the plea of guilty was – that there was a factual basis stated to the court, and the court said, you know, do you admit the 148 based on that factual basis, then would not – then if he's admitting that conduct and that's the basis for the plea, wouldn't it be hard to get to this argument? It may be. I'm just saying, given the breadth of 148, I cannot – it's hard for me to imagine how they can fashion the criminal case. They can fashion it however they want. They can certainly exercise prosecutorial discretion and say we're not – I mean, in fact, isn't it true that if that was all that had happened, it's very unlikely there would have been a charge? Well, I prosecuted a few 148 – not prosecuted, I defended a few 148 cases, and there are reasons why they bring 148 cases, which I'm not going to get into here. You may be right. But the record is here, right? We don't know the basis of the plea to the 148. What we do know is he did violate 148 by his conduct before any officer reached the porch. And we know as a matter of law that that conduct, his conduct before the officer reached the porch, would support the 148 conviction. And therefore, you cannot say on this record the 148 conviction is necessarily inconsistent with the Section 1983 lawsuit. Why would you read a charge that way? I mean, prosecutors, well, for example, they charge with, as I remember, the disjunctive and prove in the conjunctive, or I can never remember which order that goes in. They always charge as broadly as they can so that whatever proof works out at trial will convict. Why should we read the crime that he pleaded guilty to as stopping as soon as it was completed? Because heck requires that the conviction be necessarily inconsistent. And given these facts, where we've got a 148 conduct, that is, a violation of 148 that plainly occurs, and that occurs without a doubt before any officer uses force, at that point you can no longer say it's the conviction is necessarily inconsistent with success in the Section 1983 lawsuit. And at that point, the heck. Is the phrase necessarily inconsistent from the heck opinion? Absolutely. Necessarily, for sure, and I'm pretty sure it's necessarily inconsistent. And, again, you can see pretty plainly in the facts and heck how that would work. But with this record, you cannot say it's necessarily inconsistent and their heck defense crumbles now. Assume for a minute, and I suspect you're not going to be resisting the assumption, assume for a minute that we buy your heck argument and that this suit is not, this 1983 suit is not barred by heck. You had a motion for summary judgment against you by the defendant based on heck and on the underlying facts of the case where there was no excessive force. Absolutely. Assuming we agree with you on heck, is it properly in front of us whether we, the question is whether or not there was excessive force and the summary judgment should be granted or denied on these other grounds? The way I read the rules, it would appear to be, I mean, the defendants argued that the force wasn't excessive, even if it was excessive, they had qualified immunity, and furthermore, there's no Monell liability. They argued that point. We opposed it. The trial court never reached the issue. The panel never reached the issue, those issues either, because the majority went with the heck issue. So assuming you rule in Plankett's favor on the heck issue, I was going to say a few things about those other issues because I think we're going to affirm on that. Correct. Can we, if we reverse on the heck issue, can we say, and, you know, on the other issue, we would hold for you also, which was not quite affirming on any ground. We're reversing not only on the heck ground, but we're reversing what you think we think you might possibly do if you reach that other issue. I would say the issues are before Your Honors to decide the other issues, and I'm going to be urging that you rule in Plankett's favor on those issues as well. I mean. Was this deadly force? Well, it. Under Garner? First of all, we have to use the Vera Cruz definition of deadly force because that's the rule in this circuit. Why do we have to use any definition? This isn't in bank court. Well, that's true. The inbound court. Do you agree with the Vera Cruz definition? I argued for the plaintiff in Vera Cruz, and no, I don't agree with it. It's a definition that is not subscribed to not only by other courts for the most part, but interestingly enough, not even the police use the Vera Cruz definition. In this case, him at police department, they used the traditional definition of deadly force, substantial risk of death or serious injury, which is the definition used by police agencies throughout the country. And I mention that because one of Vera Cruz's rationale for its definition was that, well, it would be expecting putting too much of a burden on police officers to use this substantial risk of death or serious injury. And my response to that is the police have been using it for years. I don't see what the problem is. But I would submit even under the Vera Cruz definition, the evidence here established the use of deadly force. And with respect to the bites on the neck and under the arm, we had the declaration from the doctor. Basically, you've got a quarter inch of soft tissue preventing you from death when the dog bites you on the neck and on the underside of the upper arm. And the neck, of course, the dog gets you in the throat. It crushes the trachea and you're dead in three or four minutes. Usually those things don't occur because usually the dogs aren't biting in those locations. In this case, the dog was biting in those locations. That's why I say the dog meets the definition of deadly force, even under Vera Cruz. If you use the traditional definition of deadly force, then, yeah, absolutely the dog attacked with deadly force. If you use the Hennepin definition of deadly force, of course it's deadly force. Even if you don't use the deadly force analysis, the force is unreasonable, right? I mean, all they had to do is what cops did before they had dogs put on people. They grabbed their arms, they handcuffed them. I mean, what they had here, they had a man emotionally upset and who was mouthing off with the police, not obeying their commands, but he wasn't threatening them. I mean, he didn't kick him, didn't threaten to kick him, didn't make any verbal threats to him. Police saw no weapons. They had no information. He had his hands in his pockets, didn't he? What? He had his hands in his pockets. At one point he had his hands in his pockets. Isn't the reason the police tell them take your hands out of your pockets,  they're afraid of a gun. Oh, absolutely. In fact, he eventually did take his hands out of his pocket, right? Initially he did, right? He kept his hands in his pocket. My point is that. Wasn't there some evidence that the wife told the police at the outset that he didn't have a weapon? That's. She did. I mean, particularly domestic disturbance caused one of the things police do. Are there any weapons in the house? Any guns? And she told the police dispatcher, no weapons, no guns, no nothing. And his PJs? He's in his pajamas. In other words, he's got a gun in the pocket of his PJs. That's going to show in a different way than if it's in the pocket of his earbuds. I would expect so. No one claims, no officer claims that they thought he had a weapon on him. Obviously, there's always that possibility. It doesn't matter who you stop. We have a record on it. I think one of the briefs might have mentioned underwear. My understanding is pajamas. Some people sleep in sweatpants. Do we know what he was wearing from the record? What we know is he says he was in his pajamas. The police don't dispute that. All I'm saying is you had an offense that the police had every right to investigate, but they went there. Undoubtedly, there was no information. He was armed. No information. He was posing some type of imminent threat. When they dealt with him, when they saw him, when they heard him talk, they saw nothing indicating where I'm threatening you, I'm threatening somebody else. They claimed he'd seen no weapon. What about, wasn't there some, was there evidence that this particular dog had bad teeth and couldn't really hurt anybody? The officer testified. The officer testified the teeth were capped. Defense counsel argues they were ground down to the jaw, I guess, but that's all the officer said, that they were capped. Okay. Yeah. They still penetrate. They still crush. There's no evidence or anything that this dog couldn't hurt people. Yeah. No, absolutely not. I mean, the training of the dog is such that if all this dog has is got gums, he doesn't make it to the squad car, okay? So anyway, this case, on the issue of the force, a jury could find was unnecessary. We moved to trial court. We said, look, on the evidence, the undisputed medical evidence, the risk of serious injury, you should grant summary judgment for plaintiff at least insofar as the dog attack is concerned. And as far as the Veracruz issue is concerned, as I say, I'm a critic of the definition, but that's the definition until this court or some other court rules otherwise. And you would prefer, and argued in Veracruz, and I guess you're arguing now that the model penal code definition of deadly force is the definition we should adopt? Yes. I mean, it is the definition of the 50 states, the District of Columbia and Puerto Rico, all but one, or actually two, use the model penal code or its equivalent. The police agency is deadly force as used by police rather than a deadly force as used by a criminal? Well, then let's talk about what police departments, how they define it. Police departments, when they use force, define deadly force the way the model penal code defines it, just like him at PD defines it. The dispute in these cases, the dog bite cases where we park company, is that the police agency say, well, dogs aren't likely to cause serious injury. You know, it's like little puncture wounds or something. And there's not so much a dispute over the definition. It's always a dispute over what are the likely injuries from the dog attacks. We've amassed, and it's in the record here, a significant amount of evidence of the high likelihood of serious injury. Yeah, yeah. I mean, death is highly unlikely for various reasons. I mean, I think the risk of death from a police dog attack is about the same as death from a rattlesnake bite, like one in every 2,000 or 3,000. And obviously that's because you get medical treatment right away. You know, paramedics respond. Blood loss is a major cause of death from dog attacks. But when the dogs start biting on the neck, that's when the risk of death, of even death, goes way up. And that's when people die from dog attacks. If we were to adopt the model penal code definition of deadly force as we construe deadly force under Garner, because all Garner does is say deadly force. It doesn't give us a definition. That's true. But if we adopt the model penal code definition of deadly force under Garner, that doesn't necessarily mean you get the deadly force instruction in every dog bite case. It's going to depend on the circumstances of the case. That's true. I mean, first you have to have evidence that would support a finding that deadly force was used. If you don't have that evidence, you don't get a deadly force instruction. It's that simple. And even if you do have evidence of deadly force and you get the instruction, that doesn't mean the police can't use deadly force. It just means it has to comply with the Garner requirement. That's all. So I say Vera Cruz was wrongly decided, but I've been wrong a lot of times, of course. But you would also say that even if we're not doing this under Garner, it's still excessive force. What? That even if we're not doing this under Garner, it's still excessive force. Absolutely. You know, we had a macing here. We had a man being knocked down on the ground. The dog is biting him as he's down on the ground. He's trying to tuck his arms underneath him, keep him away from the dog. This is just – this is not how you deal with an individual in this case, okay? If he threatens you in some significant manner, if he pulls a weapon or anything like that, then the analysis is different. But all we had here was a distraught man, upset. Upset, undoubtedly, what happened between him and his wife earlier. Upset that the police are there now. And this is how the police respond. They stick a dog on him and, you know, bring him within a quarter inch of losing his life. I see that I have about two-and-a-half minutes left. Of course, I'd address any other questions if the Court has any. Otherwise, I'd ask to reserve it. Thank you. Thank you. So may it please the Court, Elizabeth Pfeffer for the apologies and defense below, Chief Pete Hewitt and the named defendant officers. Your Honor, if the summary judgment were overturned on heck grounds based on the facts of this case, it basically would get heck, and you could never apply the principles set forth by the Supreme Court in heck to any case. The Supreme Court was rather clear. Oh, wait a minute. This is unique in many ways. First of all, it's a guilty plea case. Second of all, it's a case about the strange relationship between excessive force in this particular statute. It doesn't seem to me that they almost do the same. Well, Your Honor, I disagree with that. We do have a record of what he was convicted of. And at Sanford, which Judge Silverman sat on the Sanford case and in this case, Sanford poses a different set of circumstances because the plaintiff struggled with an animal control officer, and then that stopped. And then there was a struggle with a police officer, a municipal police officer, at which time the police officer supposedly struck the plaintiff, punched her. Then there was a conviction for resisting arrest or delaying under 148. And so the question properly before the Court is, well, which 148 is it? Is it when she struggled with the animal control officer or when she struggled with the police officer? This Court also looked at that somewhat in the Smithart v. Towery case, which is cited by the appellants, somewhat similar circumstances where you have, yes. I agree with that. I'm precisely with your phrase. The question is, I agree with you, which 148 is it? And in this case, is it the 148 as he stood alone on the Court or is it the 148 as he resisted arrest while he was struggling with the police officers and the dog? There's really no difference under California law and under the charging statutes. But there was a difference in Sanford. In Sanford, you say there are two possible different 148s, but here you say there aren't, even though Officer Quinn says, as he was standing there on the Court, disobeying our lawful orders, not taking his hands out of his pockets, not turning around, not coming down off the Court. He violated 148. In fact, he did the three on at least three different sentences when he disobeyed the lawful orders. That's correct. But, Your Honor, the difference in this case is in Sanford v. Monts, you had two separate acts of resistance against two separate peace officers. If you were the defense lawyer here in the criminal case, Mr. Smith's lawyer, and were advising him whether to plead guilty, what would you have told him? Your Honor, you would have to have a discussion with him. And you would have told him. Right. Presumably you would have told him you have to plead guilty because you violated 148 several times before we could ever raise the defense. Right? Your Honor, in California, since approximately 1901, there's been a rule of law of criminal pleading and of charging of the continuous conduct rule. And, again, we didn't brief it because it really arose in the context of the dissent in this case by Judge Fletcher of what was charged. But the continuous conduct rule, which has been in effect, there's People v. Jefferson from 1954, 123, 2nd, 219. It goes back, People v. Melendez, 224, 3rd, 1420, 1990. It was applied to the 148 context. And People v. Moreno, 1973, 32 count, 371. Suppose continuous conduct. The continuous conduct is there can be many separate 148s or there can be many separate punches of a child, for instance. You punch a child five times, but it's like that, that's one count. But you punch a child at 9 o'clock, you punch a child at 11 o'clock. My question was whether it would be a defense to this 148, whatever it was, that at some point at the end there was arguably excessive force and therefore for some period of time he wasn't violating 148, but for another period of time he was. Was that a defense to 148? Could he have said, I can't be convicted, I'm not going to plead guilty? Under the continuous conduct rule, the prosecutor has the discretion to charge one count, which is exactly what happened in this case. I believe the criminal complaint is at 161, the record. Defense to that one count, that at some point during that one count there was excessive force, but at other points there wasn't. Again, under the continuous conduct rule. Right. I'm trying to. The prosecutor will not file 15 counts of 148. And if you look at the record most favorable to the appellant, if you look at the appellant's index of the excerpts of the record from page 47 through page 70, and then again on page 84, put your hands up, no. Put your hands up, no. Put your hands up, no. I put them up, I take them down. They tell me, come here. I try to go back inside the house. They tell me to stop. I don't. If I had been all one charge, I'm asking you whether the defense would have worked to that one charge. Your Honor, if before a court, before a judge in California can accept a guilty plea, the defendant has to agree what the factual basis is. The counsel joins in that. If the judge is not satisfied the plea is voluntary and that the defendant understands what he's charged with, the court cannot accept that plea. We don't know the factual basis for the plea, do we? And that's the problem here. Well, Your Honor, I assume it's really not a problem because under the continuous conduct rule, the DA charged one count. It's the entire thing. Well, you would agree that under California law, though, that one could be guilty of 148 without any physical resistance. That is true, Your Honor. But the DA charged only one count. How was it charged? Could you read the words of the charge she pleaded guilty to? Page 161 of the record. That's not our excerpt. It is. It counts excerpts of records, and I think it's volume 2, Your Honor. It's labeled as Exhibit D, but there's a 161 at the bottom. That should be the number. It's count 2, that the above-named defendant, paragraph, defendant, Thomas Gomez Smith, committed the violation of Penal Code Section 148, a misdemeanor, and that on or about August 16, 1998, in the County of Riverside, State of California, he did willfully and unlawfully resist, delay, and obstruct a public officer, peace officer, and emergency medical technician in the discharge and attempt to discharge a duty of their office and employment. This satisfies the general notice requirements of Penal Code Section 950 and charges page 161 from the record, Your Honor. It's in the appellant's excerpts of record, volume 2. Okay, but all that does is just repeat what the statute says. Absolutely, Your Honor. It's only recited. The statute hasn't told us any facts other than on a particular day he did this. That's correct. So it doesn't help us understand what conduct the prosecutor was charging. That's correct. That is correct. But under criminal law, the criminal defendant, Mr. Smith, could have either filed a demur to the criminal complaint and could have forced the prosecutor to elect. And, again, many of these continuous conducts. Would that have done him any good? If he had pled – if he didn't understand what he was pleading to. Well, yeah, but he knows that he's resisted – that he's obstructed the officers in the conduct of their duty. I think Judge Berzon's question was, could he have alleged the excessive force as a defense to the 148 charge? Under California law, no. Under California law, which SUSAG cites in detail, the SUSAG v. Lake Forest case, it's very clear that if you are convicted of a 148, then you're definitionally admitting that the force used against you was lawful. Well, I guess – I guess he could have – he could have perhaps forced an election by contesting the jury instruction about the defense where there's a jury instruction that says you have a right to resist excessive force and you can't be convicted of the crime if the police used excessive force. And he could have said, I want the instruction. Prosecutor could have said, it doesn't apply to when he's standing on the porch with his hands in his pockets. And he could have said, you limit the evidence to when he's standing on the porch with his hands in his pockets and limit the charge to that. I don't get the instruction. But if you want to prove the scuffle as part of your charge, I get the instruction. Yes, Your Honor. And, again, I hope I answered Judge Berzon's question. I think you did. Okay. I apologize again. I'm trying to understand this. I'm trying to understand Judge Berzon's question that, under your theory, if it's a continuous offense, then, of course, the unlawful conduct would be a defense to the entire charge under your theory, right? That is correct, Your Honor. And, again, under Heck v. Humphrey, the plaintiff, Mr. Smith, actually has two burdens. He has the burden of showing that his conviction was overturned, expunged, et cetera. And the second burden he has is that the conviction is not basically mutually exclusive of the use of excessive force. I just don't understand. I don't understand your answer to Judge Thomas's question. You say that because this is continuous, even if he would have been guilty of the first part of the conduct before there was no excessive force, that there would have been a defense to that? He could not have been convicted of the conduct that occurred before the excessive force? If, Your Honor, under California criminal pleading, if there's one continuous course of conduct, if you are convicted of that, the defendant does not, the criminal defendant does not make the prosecutor break it down. You are convicted of the entire course of continuous conduct. The point of the defense, as I understand it, is that if the officers were acting lawfully, unlawfully, then there would be no violation. But if they were acting unlawfully only with respect to some part of the continuous violation, why wouldn't there be no conviction? There would be a conviction because Mr. Smith admitted that he resisted during the entire unbroken sequence of events, unlike in Sanford v. Moss, where there was resistance to an animal control officer and then resistance to a police officer. I'm sorry. I'm confused if you mean defense in the criminal action or defense here. The criminal action. Your Honor, he admitted the entire course of continuous conduct. We don't know that, though. Again, Your Honor, if any of them We don't know. This was pursuant to a plea. How many counts was he charged with?    Was he charged with it? Page. Page. Page. Page. Page. Page. Page. Wasn't he also charged with assault on his wife or something? 153? You are correct, Your Honor. He was charged with one count of 148. On pages 91 through 93 of the Appellant Sex Officer Record, which I believe is in volume 1, the certified copy of the docket will show that he was charged with two offenses. One is for the 243E, which is the battery, the spousal battery, but one count of resisting arrest. On page 93, starting on page 92. He struck a plea bargain. He did, Your Honor. But. And we don't know from this record what the basis for his willingness to plead guilty, why he agreed to plead guilty. What was the factual basis? Well, again, page 93 shows that he understood the factual basis. He keeps saying he pled guilty to a continuous course of conduct, but we don't know that. Under the charging statutes of California, he was charged with one count. But it was a negotiated plea. They struck a deal. Well, let me ask you this. If he had, let's say that Mr. Smith, at the time he entered his plea, said, I am pleading guilty based on that I didn't take my hands out of the pocket. That's the basis for my plea. If that had been the case, or if defense counsel had said, I want the information amended to say that he resisted arrest when, and stated what the conduct was, if that had been done, would you agree that it would be a different case? I agree. If Mr. Smith had made the prosecutor break it up, so I'm pleading to not putting my hands up the first time but not the second time, that would be a different case, but that's not what happens here. I know that's not what happens. So what I'm saying, so is it basically whose burden is it to make it specific? And you're arguing that if it's general, that then heck applies in this situation. But if defendant had made it specific, and you're putting the burden on the defendant, or Mr. Smith, who would be the plaintiff in the other lawsuit, and the appellant here, then you're saying if he had made it specific like that, then heck would apply to the conduct, not taking his hands out of his pocket, but would not necessarily apply to the conduct that was after it. He could make that argument, then. Because of the continuous conduct rule of criminal pleading and charging in California, if he is charged with a continuous course of conduct, and he admits or is convicted of a continuous course of conduct, he's convicted of the entire thing, unless he asks for a jury instruction or forces the prosecutor to elect the factual basis. It's up to the criminal defendant to break it down. Or he could even just stand up during his entry of his plea of guilty and say, Your Honor, the factual basis that leads me to plead guilty in this case is limited to my refusal to take my hands out of my pockets when the policeman lawfully ordered me to do so. That's correct, Your Honor. There is no showing in the record that Mr. Smith tried to get around the continuous conduct rule. I'd like to also direct the Court to page 75. Counsel, the continuous conduct rule, though, only would have prohibited the prosecutor from issuing a five-count Section 148 charge. Isn't that right? Five-count or 15-count. Or three-counts or seven-counts or however many the prosecutor decided was discreet acts on the part of Mr. Smith. So he doesn't get charged for each time he refuses to put his hands up in the air. We've got to get sort of one. So you viewed this thing as sort of one count. But it still doesn't answer the hard question, which is since he could be charged since he resisted or obstructed an officer when he refused to take his hands off, that's quite different than at the end when the officers have jumped the dog and hit him in the face with the mace. Again, I hope I fully respond to it, but that's correct. The district attorney did not break it down. So Mr. Smith did not break down the plate. Could the prosecutor have brought separate 148 charges here? In theory, yes. But, again, under the continuous conduct rule. Well, does the continuous conduct rule bar him from bringing multiple charges or can he bring multiple charges? Again, in theory. But in practice, the district attorney won't. So if he can in theory, then how do you explain the necessarily language and heck? Well, again. In other words, if there are two alternate theories, one which would impact the validity of the conviction and one which would not and we don't know, is not allowable under heck then because it must necessarily impact the conviction? Well, Your Honor, under heck, of course, the court announced a general rule in its policy and gave the example in note 6 about the State. It's up to every State to determine basically the basis. I also have the general rule that the relationship between habeas in 1983 that was impermissible. I mean, that would make the 1983 case not a viable one, is one in which the 1983 case would necessarily imply the invalidity of the conviction. That's a quote from the statute, right? That's correct, Your Honor. So how would this necessarily imply the invalidity of the conviction? Again, to respond to both of you, heck is the general rule and it's up to every State statute and every State court to determine it. In California, it's been determined that a police officer has to use lawful force during an arrest and that if an officer uses excessive force, he's committing a battery and he's not in the lawful performance of his duties. So a criminal defendant cannot be convicted of 148 of resisting or delaying unlawful force or unlawful orders. If someone is walking down the street, a police officer has zero suspicion, zero cause at all to suspect that person's involved in any wrongdoing, and the police officer says, hey, get back here, and the person doesn't. But this guy would have been convicted under the indictment or the complaint before there was any force used, as far as we know, because the plea, the felony plea wasn't broken down, the factual basis wasn't broken down, and the statute would allow it. So how does it necessarily imply that his conviction was invalid? It necessarily implies it because he admitted the entire course of conduct. He didn't break it down. He admitted only that he violated 148. Let's assume that we are following this continuous course of conduct and the prosecutor charges only one count of the prosecuting property. He says, I'm going to try. And the prosecutor introduces evidence of you were up on that porch, you disobeyed three lawful orders, and you violated 148 and rests his case. Got a conviction? Prosecutors could. Absolutely. There you go. But the prosecutor would put on the evidence, and again, if you look at Mr. Smith's loan deposition testimony, which is in the record from page 47 through 70, and again at page 84, he admits he fought the entire time. Well, of course he admits he fought, but that's later on. And I'm asking you, if the prosecutor gives one count covering the entire course of conduct, beginning when he's on the porch by himself and untouched, ending when he's down on the porch with a dog on top of him being handcuffed after the I'm not quite sure whether to call it a scuffle or whatever it is, after the physical conduct has taken place. He pleads, without differentiation, guilty. But let's say now he doesn't plead guilty. He says, I'm going to try, because I want to argue that, you know, that force was excessive when they actually arrested me. And the prosecutor, knowing that this is the defense he's going to use, said, Well, you know, the only thing I'm going to use to show violation 148 is he didn't take his hands out of his pockets. He gets testimony uncontradicted that he didn't take his hands out of his pockets, didn't turn around, didn't come down off the porch. That's his case. Does he get a conviction? You said yes. He could do that, Your Honor. And again, in the SUSAG v. White Forest case, the California court of appeal was faced with a conviction after a jury trial and not a guilty plea in this case. And the SUSAG plaintiffs said the same thing, the exact same thing. What was I convicted of? Was it the first F.U.? Was it the second F.U.? Was it not putting your hand up? And the DA is not going to break it down like that. And in that case they were interpreting 1983 as a hack and they may have been doing it wrong. Well, in that particular circumstance, they were interpreting 148 based upon existing California law. All right. Then officers not acting in conformance to the duties. Here's the test of the following. Assume for the moment, and you might not particularly like this assumption, but assume for a moment that we can get past HEC and we say that HEC does not bar. We can affirm on any ground. That is correct, Your Honor. Are you arguing also in this court that summary judgment should have been granted to you on the facts as to whether or not there's qualified immunity? Yes, Your Honor. There are three bases for summary judgment. All three appear in the record. Of course, the law in the circuit is very well established that if the district court granted summary judgment, but for the wrong reason, but the right reason is reflected in the record, the court may affirm on any ground in the record. So if we get past HEC and the rest of the motion that was not reached by the district court is now, as it were, available, you say that question is in front of us? Two questions are, yes. The first one is the four subjectively. I'm sorry. Is the question in front of us only if we're going to affirm on your side or is the question in front of us whether we agree or disagree with you? Well, and that's an interesting issue, because it is de novo. The appellant's statement of appeal, which is found in page one of the supplemental excerpts of the record, the appellant says the sole basis for appeal is whether HEC v. Humphrey bars this. But because we did move for summary judgment on two separate grounds, number one is the four subjectively reasonable under Graham v. Conner, and if it's not, number two, does qualified immunity apply, particularly in light of Saussure v. Katz, 1999, what did the officers know about the level of using a police dog? The brief, the issues listed in the blue brief seem to encompass the merits. So what are we using? Your Honor, it's in the supplemental excerpts of the record that we filed before. The appeal? It's the civil appeals docketing statement by appellant. That's a brief definition. That's correct, Your Honor. The appellant's sole issue for appeal is whether HEC applies. But our brief did address all three issues. But the accounts in our opening brief also briefed the merits. That is correct, Your Honor. And it sounds as though you're quite happy to move beyond HEC if you're going to win on the case beyond the question beyond HEC. Well, I'm happy if summary judgment is affirmed on any ground, Your Honor. But, but, but. In other words, you're saying we're not confined by the statement in the notice of appeal. We might be confined by what's in the brief, but this question is briefed by both sides. That is correct, Your Honor. Right. Again, if any reason is correct in this Court's opinion on this de novo review, then I believe all three grounds are fair for review. But on the question moving beyond HEC, do you disagree with your opponent's statement that your police department and the others define deadly force as a significant risk of death or serious injury? Sorry. The definition of deadly force that the Hemet Police Department followed follows Graham versus Connor, which is the objectively reasonable standard. And, again, in particular, if it's reasonably likely. In this instance. Reasonably likely because death or serious injury. That's correct, Your Honor. Okay. So our Vera Cruz standard is not in conformity with your police department's or, in fact, anybody else's as far as I can tell, when it limits it to death and does not include serious injury. Well, again, it's, it's how, how likely it is to cause serious injury. And potentially anything can be deadly force, Your Honor, depending on how it's used. But in this circumstance, it was established, and, again, in 1999 when this incident occurred. My question was, assuming it reaches your likely standard, sufficiently likely, it doesn't have to be sufficiently likely to cause death. It can be sufficiently likely to cause serious injury. Serious bodily injury. Correct. That's correct. What do you do with the Nonet problem in this case? That Mr. Smith is no longer incarcerated. That he probably lacks the ability through behaviors to challenge his conviction. And at least we have some authority that under those circumstances, heck, wouldn't apply at all. How do you respond to that? Well, we think that, if I may, the probation has expired. So, he would be beyond his opportunity to, it's beyond his ability to challenge the conviction. And what, what, what implications do you think that has for Heck under Nonet? Well, again, I think it's a case-specific analysis, just as looking at Sanford versus Motts is a case-specific analysis. He was on probation for three years? That's correct, Your Honor. Is there any reason he couldn't have brought a habeas within the three years? There's no reason I'm aware of, and certainly none has been brought to my attention. Is there a procedure under California law where someone pleads guilty can also do a direct appeal by getting a certificate of probable cause from the court? That's my understanding, Your Honor. And doesn't Nonet, by its own language, isn't it specifically limited to prisoner loss of good time credits? I'm not specific. I'm not a criminal appellate specialist, Your Honor, so I don't know how broad it goes. Take a look at note seven of Nonet. We emphasize that our holding affects only former prisoners challenging loss of good time. It does not deal with the status of prisoners challenging their underlying convictions. Look at it at your leisure. And, again, it could be, Your Honor. I'm just not a criminal appellate specialist, and I just don't feel comfortable stating a general rule of every circumstance it applies under. If I may respond to one other issue just briefly about what the record does and doesn't show. I'd like to direct the Court to page 75, the appellant's excerpts of record. It's volume one. The Court will note that when I was asking Mr. Smith at his deposition the factual basis of this plea, as I said, what criminal charges were filed against you because of the incident of August 16, 1999. Again, this is page 75 of the appellant's excerpts of record starting on line 11. Mr. Cook responded, if this will speed it up, we will stipulate that he was charged with violating 273.5 of the Penal Code, spousal abuse, and 148PC, that he was charged with both counts and pled guilty to both counts as reflected in the Court paperwork. My follow-up question was, I'm just trying to find out what he understood, what the nature of the charges were. And interestingly, Mr. Cook responded, I'm not sure that that makes a bit of difference to this lawsuit whether he understood it or not. The fact is he was charged. The fact is he pled guilty anyway. So again, it's – if it's unclear what exactly Mr. Smith was pleading guilty to and maybe in his mind he was pleading guilty to, not putting up his hands the first time, tucking his hand in his pocket the second time, it's not for lack of trying. We did try. There was a stipulation that was entered on the record. And Mr. Cook said what Mr. Smith was thinking when he pled guilty is irrelevant. Is there anything in the colloquy during the change of plea that would suggest any attempt to limit the factual basis that he was using as the reason to change his plea? There's none whatsoever, Your Honor. And again, he admitted to it. Did you obtain a copy of the transcript of the plea colloquy? Your Honor, I don't have it. I don't remember if I tried to and it wasn't recorded. I know some courts have electronic and some have court reporter. I don't have it. If I did, I would have entered it in the record. So I – again, this goes back three or four years. I don't recall exactly, but I know I don't have it. It's certainly not in the record. Was there a written plea agreement? Again, there should have been a written plea agreement. Again, it's not in the record. But that's typically the case. And, again, the court has to be satisfied that the criminal defendant understands the factual basis. The record will reflect in the docket on pages 91 through 93 that Mr. Smith was represented by counsel at all stages in the criminal proceeding, including on the day of his guilty plea. So it's certainly not a case of a pro per saying I don't know what I was doing, just the DA, you know, blindsided me and I just pled. That's not here. He was advised by counsel. And the counsel had actually advised him as you advised us in response to my questions. And he said, you know, they really beat me up badly. And, you know, I don't think I was guilty of 148 because they were beating me up and using excessive force. And counsel says, well, you know, that's going to be your argument. They're just going to – the only evidence they're going to introduce is you violated 148. It's just stood on the porch. He says, oh, I don't have any defense to that. I guess I better plead. A counsel might have advised him of that. That's what you would have advised him. That was your answer to me. No, Your Honor. Sorry if I misspoke. My answer would be the district attorney could have proceeded on just that charge. But, again, if Mr. Smith truly had that conversation with his criminal defense attorney, a prudent criminal defense attorney I think would have advised him to go forward as the Sussex did in the Lake Forest case and actually go to trial on it and force the district attorney to put on the evidence. The trouble is the Woodhouse are not to test the test that requires us to apply. The test requires us to say necessarily. So you have to be able to exclude all kinds of possibilities. And I'm afraid for me you can't exclude the possibility that he pled because when he pled guilty to, was standing on the porch disobeying the order. We don't have that before the record either. There's no record that that's what he was pleading guilty to. And, again, the court record is very clear and California pleading is very clear. He was charged with the entire continuous event. And the entire – also, it's undisputed, again, according to Mr. Smith's own testimony, again, page 47 through 70 of the record, and, again, 84. What Judge Fletcher is saying is that the whole – we don't know what the whole continuous event is. We don't know where it starts and where it stops. How do we know that actually ever got to the excessive force part of it? The presumption is the continuous course of conduct is the entire event until there is a break. But it hasn't been stated what the event is. They said something that happened on a certain day. They didn't say what time it started. They didn't say what time it stopped. Certainly, they could have gone forward in the manner that Judge Fletcher is suggesting for a continuous event that stopped at the time before any physical force was used. I don't see how the continuous event can help you one way. You're right. And, again, I disagree with you. Decades of pleading practice – criminal pleading practice in California is you do charge with one event. Let's decide to prevent the prosecutor from multiplying the counts. It doesn't tell you what's provable once the count has been brought forward. Again, it's the criminal defense obligation to come forward and say, hey, District Attorney, what are you charging me with? I'm going to submerge to the criminal complaint. I don't know what I'm being charged with. I don't know if I'm being charged with asking to step off the porch or if it's putting my hands up or if it's fighting with the officers and tucking my arm underneath and they're telling me they're going to pepper spray me. And I say, no, I'm not going to comply, and they pepper spray me, and they tell me to comply again, and I still fight with them. Then I see the dog. The dog fights me. I keep fighting. As is shown in this record, again, Mr. Smith states at page 84, he fought with the officers the entire time. Counsel. Your time has expired. Okay. I'm sorry to put that here. It shows there's time remaining on yours. I apologize. No, that's red. Okay. Thank you. Briefly, from the comments of counsel in response to the court's question, it's plain and simple that the record here does not show the basis of the 148 conviction, and because there's a 148 or two or three lurking here that is not inconsistent with his section 1983 lawsuit, this is not a case where success on the 1983 claim necessarily implies that the conviction was invalid. Counsel, did you look for the colloquy between the trial court and Mr. Smith on his plea? Counsel, she said she didn't remember seeing it. There's nothing in the record. All we have in the record besides the complaint that was filed, we also have the docket. Do you have a copy of the plea agreement? No, I do not, and it's not in the record. Well, you don't need to. You're the plaintiff. I'm not quite sure how that works. Do you have any burden to show that this does not necessarily question the criminal conviction? I think the record already establishes. So the question is where is the burden? Is the burden on the defendant? Is Heck v. Humphrey a defense? They're the moving party. They have the burden to raise it. But we have the record that we have from the criminal trial court, and that record does not show that success in the 1983 lawsuit would necessarily imply that the criminal conviction was invalid. That's what we have in the record. I'm not sure is that counsel's answer, but the Hemet, at page 169 in the extra record, paragraph D is the Hemet Police Department definition of deadly force. That is, in the use of force by a police officer, it's reasonable likelihood of causing death or serious injury, which I submit should be the deadly force definition. Thank you. Thank you, Justice. The case is started. It's submitted to the jury. The courts are on a calendar for this session. The court stands adjourned.
judges: Schroeder, Pregerson, Reinhardt, Kleinfeld, Thomas, Silverman, W. Fletcher, Paez, Berzon, Bybee, Callahan